# IN THE UNITED STATES DISTRICT
## FOR THE NORHTERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**F I L E D**

SEP 04 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **COASTAL CONVERTORS, INC.,** ) | |
| ) | |
| Plaintiff, ) | **Case No. 07 C 6904** |
| ) | |
| vs. ) | **Judge Milton I. Shadur** |
| ) | **Magistrate Judge Nan R. Nolan** |
| **ROSENTHAL MANUFACTURING** ) | |
| **COMPANY, INC.,** ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff Coastal Convertors, Inc., by its attorney, George E. Weaver, hereby

moves the court[1] to compel Defendant Rosenthal Manufacturing Company, Inc. to fully

respond to plaintiff's interrogatories and document requests and, in support thereof,

states as follows:

## BACKGROUND

In relevant part, plaintiff's claim is that defendant sold it a machine known as a

"sheeter", for approximately $90,000, which was supposed to cut sheets out of rolls of

polyethylene at the rate of 30 cuts per minute, but, instead, the machine persistently

jammed and otherwise malfunctioned, despite efforts to correct those malfunctions.

Complaint, Ex. 1, ¶¶ 6-8, 13. According to defendant's promotional literature, there is a

"standard configuration" for its sheeters from which "machines are built to order and can

be custom configured." Ex. 2.

---

[1] As defendant's counsel, Brett Nolan, has advised plaintiff's counsel that there is a family relationship
between him and Magistrate Nolan, plaintiff requests that this motion not be referred to Magistrate Nolan.

## THE DISCOVERY AT ISSUE

Plaintiff, in its written discovery, has sought information concerning how the subject sheeter was configured and whether defendant's other customers have voiced similar complaints about similar sheeters. Defendant has objected, arguing that information concerning the configuration of the subject machine is irrelevant and proprietary (despite plaintiff's offer to enter into an agreed confidentiality order) and that information concerning the experiences of defendant's other customers with similar sheeters is irrelevant. Defendant's responses to plaintiff's document requests and interrogatories are attached hereto as Exhibits 3 and 4, respectively.

After written[2], telephonic and in-person attempts by counsel to resolve the matter, defendant has stood by its objections, which are set forth below:

**Request for Production No. 6**. All diagrams, drawings, blueprints, photographs, videos and other depictions of any type and any plans or instructions for constructing, assembling or running the subject sheeter or one of its generic type.

Response: Rosenthal objects to Request to Produce No. 6 on the grounds (1) that such information is a trade secret and (2) that such information is neither relevant nor could lead to the discovery of relevant evidence. Subject to this objection, Rosenthal will produce the video of the Pin Stacker, which is posted on Rosenthal's website. Moreover, Rosenthal will produce an instructional video that was sent to Coastal after its purchase of the Pin Stacker.

**Request for Production No. 7**: All documents asserting any complaints concerning jamming, low speed operation, malfunction of any type, defects or misrepresentations, including, without limitation, any complaints filed in litigation.

Response: Rosenthal objects to Request to Produce No. 7 on the grounds that Coastal seeks "complaints filed in litigation." Such information is neither relevant to Coastal's claims nor could it lead to the discovery of relevant evidence. Subject to this objection, Rosenthal will produce all non-privileged documents concerning <u>Coastal's</u> complaints regarding "jamming, low speed, operation, malfunction of any type, or defects or misrepresentations." (Emphasis added.)

---

[2]  The correspondence exchanged by counsel is collectively attached hereto as Exhibit 5.

**Interrogatory No. 2**.  Since January 1, 2002, to whom (giving names and addresses) has defendant sold any sheeters of the generic type, or substantially similar to the type sold to Plaintiff and, if the number of such customers exceeds twenty, state the number and list the twenty such customers closer [sic] to Chicago.

Answer:  Rosenthal objects to Interrogatory No. 2 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the identity of Rosenthal's customers has no connection whatsoever to Coastal's claims arising out of its purchase of the Pin Stacker.

**Interrogatory No. 3**:  Other than the claims alleged in this action, has defendant received any claims or complaints, whether written or verbal, that any of its sheeters has not performed adequately, since January 1, 2002?  If so, for each such claim, please state the following:

1. The person and entity first making such claims;
2. The date defendant first received notice of such claim;
3. A detailed description of the assertions made in such claim;
4. Whether litigation was filed and, if so, the court in which the action was filed, the caption and the docket number;
5. The disposition of such claim;
6. The identity of claimant's attorney, if any.

Answer:  Rosenthal objects to Interrogatory No. 2 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, claims or complaints made by other Rosenthal customers has no connection whatsoever to Coastal's claims arising out of its purchase of the Pin Stacker.

Defendant has also objected to providing documents in which it has represented

the speed ("hits") for this type of sheeter, as follows:

**Request for Production No. 1**:  All documents whereby any statement or notation of any type is made concerning the number of hits or put throughs (whether using such actual terms or not) or other description of the speed of operation of the type of sheeter which is involved in this action, including, without limitation, those contained in any brochures, catalogues or advertisements of any type relating to any sheeter of the generic type as that invovled herein.

Response:  Rosenthal objects to Request to Produce No. 1 on the grounds that Coastal seeks documents relating to machinery different from that purchased by Coastal.  Put another way, the Pin Stacker purchased by Coastal is custom-made, and

thus brochures, catalogues or other documents relating to the kinds of machinery built by Rosenthal are neither relevant nor could lead to the discovery of relevant admissible evidence. Answering further, and subject to the above objection, no documents exist which contain any statement or notation by Rosenthal as to the number of "hits" or "put-throughs" to be performed by <u>the</u> Pin Stacker. (Emphasis added.)

Finally, defendant has placed an overall limitation on its responses to plaintiff's written discovery concerning similar sheeters, by way of the following general objection:

<u>**Defendant's General Objection:**</u> Rosenthal objects to Instruction and Definition No. 3 of Coastal's Fist Set of Interrogatories.[3] That Instruction and Definition provides as follows: "When an interrogatory requests information concerning sheeters of the 'same type' or 'same generic type' these terms include, without limitation, Rosenthal Servo Sheeters." Rosenthal objects on the grounds that the definition of the term "Rosenthal Servo Sheeters" is so broad as to include sheeters of a type different from that sold to Coastal. Put another way, the Pin Stacker sold to Coastal is not the same as or synonymous with all other "Rosenthal Servo Sheeters." Accordingly, Rosenthal objects to Coastal's attempt to conflate the different types of machinery. All answers to the Interrogatories incorporate this Objection.

## <u>ARGUMENT</u>

### A.    <u>Defendant's Relevance Objections</u>

Plaintiff wants to be able to demonstrate that the sheeter it bought from defendant was designed and built in such a way that it caused jamming and other malfunctions. Armed with drawings, an expert for plaintiff might be able to opine whether, and how, a certain configuration caused the sheeter to malfunction. At the same time, that evidence would tend to rebut an assertion by defendant that there was something about the way that plaintiff's employees operated the machine, and not the machine itself, which caused the problems encountered by plaintiff.

Plaintiff also wants to find out whether defendant's other customers have encountered similar problems. If, for example, defendant sold five sheeters in the last

---

[3]    Defendant has raised the same objection to plaintiff's request for production.

six years (including the one sold to plaintiff) which had the thingamajigger connected to the thingamabob, and all of those sheeters jammed, whereas the other fifteen sheeters sold by defendant during that period had the thingamajigger connected to the dohickey, and all of those sheeters performed admirably, subsequent discovery, and an expert's opinion, could focus on those particular connections.  Also, defendant's other customers may have developed proof demonstrating the sheeters' faulty construction and/or defendant may have made admissions on that score while wrestling with its customers' complaints or during litigation.

Further, documents showing that defendant has represented to others that its sheeters would operate at a certain speed could lend credence to the claim that such representations were also made to plaintiff.

For discovery purposes, relevancy should be broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought might be relevant to the claim or defense of any party. *McCoy v. Whirlpool Corp.*, 214 F.R.D. 637, 640 (D. Kan. 2003) (disallowing Whirlpool's relevance objection which maintained that the requested discovery involved dishwashers which were not substantially similar to plaintiff's dishwasher).

The burden is on defendant, as the party resisting discovery, to clarify and explain precisely why its relevance objections are proper, given the broad and liberal construction of the federal discovery rules. *Aircrash Disaster,* 172 F.R.D. 295, 307 (N.D. Ill.1997); *Schaap v. Executive Industries, Inc.*, 130 F.R.D. 384, 386 (N.D. Ill.1990).

"Information about similar products or devices is generally discoverable." *Baine v. General Motors Corp.*, 141 F.R.D. 328, 330 (M.D.Ala.1991).

Further, complaints from defendant's other customers might lead to the discovery of evidence pointing out how these sheeters operate and could assist plaintiff in demonstrating that it was not its particular use of the subject sheeter which caused it to jam. Accordingly, this information should be discoverable. *Bowen v. Whitehall Laboratories, Inc.*, 41 F.R.D. 359, 360 (S.D.N.Y.1966).

## B.    <u>Defendant's Trade Secret Objection</u>

Defendant should not be allowed to block production of the requested drawings and diagrams on the basis that they are trade secrets, while refusing to even entertain plaintiff's offer to enter into an agreed confidentiality order. The court in *Kramer v. Boeing Co.*, 126 F.R.D. 690 (D.Minn. 1989) cited the Seventh Circuit's decision in *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984), in stating as follows:

> Ordinarily, information which is of a confidential or proprietary nature is not, for that reason alone, outside the parameters of civil discovery .... The appropriate means of maintaining a party's business confidences is by a protective order.... It should be a rare case in which even highly sensitive business confidences, relevant to a civil law suit, should be entirely unavailable through discovery.

126 F.R.D. at 695. *See, also*, *Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y.2006) ("Courts routinely direct that confidential trade secret information be produced subject to the terms of a confidentiality order.").

WHEREFORE, plaintiff moves the court to compel defendant to fully respond to plaintiff's interrogatories and document requests.


George E. Weaver.
Attorney for Plaintiff

George E. Weaver
LAW OFFICE OF GEORGE E. WEAVER
105 East First Street, Suite 203
Hinsdale, IL 60521
(630) 321-9810
ARDC #2953412

**IN THE UNITED STATES DISTRICT**
**FOR THE NORHTERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

COASTAL CONVERTORS, INC.,

      Plaintiff,

      vs.

ROSENTHAL MANUFACTURING
COMPANY, INC.,

      Defendant.

**RECEIVED**

DEC 0 7 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Case No. _____

**07C  6904**

## COMPLAINT

Plaintiff Coastal Convertors, Inc., by and through their attorney, George E. Weaver, for its complaint against Defendant Rosenthal Manufacturing Company, Inc., states as follows:

### INTRODUCTION

1.    Plaintiff, as the buyer of a machine known as a "sheeter", brings this action against defendant, the seller, for breach of contract and for breach of express and implied warranties.

### PARTIES

2.    Plaintiff is a corporation organized under the laws of Canada, having its principal place of business in Delta, British Columbia, Canada, and, as such, is a citizen of Canada.

3.    Defendant is an Illinois corporation with its principal place of business in Northbrook, Illinois and, as such, is a citizen of the State of Illinois.



## JURISDICTION AND VENUE

4.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) based upon the complete diversity of citizenship of the parties and the amount in controversy exceeding the jurisdictional minimum of $75,000, exclusive of interest and costs.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because, *inter alia*, defendant's place of business is within the Northern District of Illinois, Eastern Division.

## GENERAL ALLEGATIONS OF FACT

6.      Defendant is a manufacturer of sheeters which slit and cut (known as "hits") sheets of polyethylene "foam".

7.      Plaintiff is in the business of cutting sheets of polyethylene foam to the specifications of its customers which, in turn, produce products from these custom cut polyethylene sheets.

8.      Prior to the sale agreement between the parties, which is alleged below, defendant was very familiar with plaintiff's operations and of the sheeters that were in place at that facility and defendant's representative stated to plaintiff's representatives that defendant could provide plaintiff with a machine that would exceed plaintiff's requirement of obtaining 30 hits per minute.

9.      Based upon that representation, plaintiff ordered a sheeter from defendant and defendant agreed to provide the aforesaid machine as evidenced by defendant's Quotation, Invoice, Certificates of Origin documentation and Canada Customs Invoice, which are collectively attached hereto as Exhibit A.

10.    In addition to the representations made by defendant that the aforementioned sheeter would make at least 30 hits per minute, defendant also promised that the sheeter would be delivered within 90 days from the date that plaintiff paid a deposit of one-third of the purchase price.

11.    Plaintiff paid the deposit to defendant on September 14, 2005, with that check clearing plaintiff's account on September 23, 2005.

12.    Contrary to the aforementioned representations and contractual terms, the sheeter was not delivered to plaintiff until April 6, 2006.

13.    Further in breach of the defendant's representations and the terms of the parties' agreement, the sheeter did not, and does not, operate so as to produce 30 hits per minute and, indeed, will not even reach 20 hits per minute and has jammed and otherwise malfunctioned despite efforts to correct the malfunctions.

14.    As a result of defendant's breach of the aforementioned agreement and representations, plaintiff has been damaged by:  the loss of monies it has paid for the sheeter; the inability to fill its customers orders; the inability to accept certain new orders from its previous customers and prospective customers; increased labor costs; the cost of outside contractors; the additional waste of product; and, the loss of good will, all in excess of $1,000,000.

## COUNT I

### (Breach of Contract)

15.    Plaintiff realleges paragraphs 1-14 as if fully set forth herein.

16. Plaintiff has performed, and caused to be performed, all of its obligations under the contract and any and all conditions precedent to defendant's obligations have been satisfied.

17. Defendant is in material breach of the terms of its agreement with plaintiff.

18. As a direct and proximate result of defendant's breach of contract, plaintiff has suffered and will suffer damages in excess of $1,000,000.

## COUNT II

### (Breach of Express Warranty)

19. Plaintiff realleges paragraphs 1-14 as if fully set forth herein.

20. Defendant has breached the express representations, statements and warranty that the sheeter it would supply to plaintiff would be fully operational and produce 30 hits per minute.

21. As a result of the foregoing breach of express warranty, plaintiff has been damaged in excess of $1,000,000.

## COUNT III

### (Breach of Implied Warranty of Merchantability)

22. Plaintiff realleges paragraphs 1-14 as if fully set forth herein.

23. Defendant's sale of the sheeter, in the defective condition described above, was in breach of defendant's implied warranty of merchantability.

24. As a result of the foregoing breach of the implied warranty merchantability, plaintiff has been damaged in excess of $1,000,000.

4

## COUNT IV

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

25.     Plaintiff realleges paragraphs 1-14 as if fully set forth herein.

26.     Defendant knew the particular purpose for which the sheeter was to be used by plaintiff.

27.     Defendant knew that plaintiff was relying on defendant's skill and judgment to supply plaintiff with a suitable sheeter.

28.     The sheeter that defendant delivered to plaintiff was not fit for the particular purposes for which plaintiff ordered the sheeter.

29.     As a result of the foregoing breach of warranty of fitness for a particular purpose, plaintiff has been damaged in excess of $1,000,000.

## REQUEST FOR RELEASE

Plaintiff Coastal Convertors, Inc. requests judgment in its favor against Defendant Rosenthal Manufacturing Company, Inc. for an amount in excess of $1,000,000, together with costs and such other relief and the court shall deem proper.

5

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable to a jury.

Attorney for Plaintiff

George E. Weaver
LAW OFFICE OF GEORGE E. WEAVER
105 East First Street, Suite 203
Hinsdale, IL 60521
(630) 321-9810
ARDC #2953412

# ROSENTHAL SHEETING SYSTEM

**ROSENTHAL MFG. CO., INC.**
1840 Janke Drive, Northbrook, Illinois 60062-6709
Phone: (847) 714-0404
Fax: (847) 714-0440
Toll Free: (800) 621-1266
e-mail: info@rosenthalmfg.com

**QUOTATION No.** 12024

**Date:** September 08, 2005

**PREPARED FOR**

Pal Distributors Inc.
1901 - C  Logan Ave.

Winnipeg, MB  R2R 0H6 Canada
Phone:  2046972880
Fax:  2046972881
ATTN: Jack McLaughlin

**LIMITED WARRANTY**
The ROSENTHAL SHEETER is guaranteed against defective parts (excluding wearing of blades), material, and workmanship for a period of 2 years (at 8 hours per day). Defective parts are to be shipped prepaid to Rosenthal Mfg. Co, Inc. for repair or replacement. We assume no responsibility for damage to customer's stock or raw materials or loss of production. This warranty is void if the Sheeter is not paid for within terms.

In response to your inquiry, we submit the following quotation subject to the terms on the reverse side of this document:

Price

| Quantity | | Description | Price |
|---|---|---|---|
| 1 | WAS-7- | 84" WIDTH SHEETER & VARISPEED 4"MIN.LENGTH FOR SHEETING LDPE FOAM 1/16" -3/32" | |
| 5 | | UNWIND STAND FOR ROLLS UP TO 36" OD - 3" ID - MAX CAPACITY 100LBS - DRAG BRAKE - FOR 5 ROLLS | |
| 1 | E | STATIC ELIMINATOR | |
| 1 | AA | CUT LENGTH TOLERANCE +/- 1/16"(PER 36" ON STABLE MATERIAL) | |
| 1 | PLC | ALLEN BRADLEY PLC WITH PANEL VIEW DISPLAY | |
| 1 | PS | PIN STACKER - MAX  24" LONG SHEET - 10" MAX STACK HEIGHT - PINS RETRACT FOR UNLOADING | |
| 1 | | LIGHT CURTAIN | |
| 1 | | CRATING | |
| 1 | | MODIFY UNWINDS TO SAVE SPACE AS PER OPTION 1 - Add $2,500 | |

\*\*\* MODEL NUMBER  WAS-7-EAAPLCPS

TOTAL USD ...        $82,100

Accepted
04/15/06

| TERMS  With Satisfactory Credit References | SHIPPING DATE |
|---|---|
| 33% Deposit With Order. 33% prior to shipment. Balance - Net 30 Days | 120 Days from Receipt of Order and Deposit |

| FOB EX WORKS   Northbrook, IL |
|---|

| VALID FOR    30 Days |
|---|

David Rosenthal

By _____ _____ _____

GROUP EXHIBIT A



**Invoice**

| | |
|---|---|
| Custom ID | COACON01 |
| Order ID | ▓▓▓▓▓▓▓ |
| Invoice ID | 46537 |

1840 Janke Drive, Northbrook, IL 60062 USA
tel 847-714-0404  fax 847-714-0440
support@rosenthalmfg.com

Bill To : COASTAL CONVERTERS
9969 RIVER WAY
UNIT 140
DELTA, BC V4G 1M8
CANADA  TEL#604-688-4850

Ship To: COASTAL CONVERTERS
9969 RIVER WAY
UNIT 140 (ATTN: JENN)
DELTA, B.C. V4G 1M8
CANADA TEL#604-588-4850

| Invoice Date | Customer P.O. NO. | Salesperson | Ship Via | Order NO. |
|---|---|---|---|---|
| 4/20/2006 | JIM McLAUGHLIN | DAVID | CUSTOMER PICK UP | 11001 |

| Order Qty | Ship Qty | Back Order | Part ID | Description | U/M | Unit Price | Total Price |
|---|---|---|---|---|---|---|---|
| 1.00 | 1.00 | 0.00 | SN-81173 | COASTAL CONVERTORS (PAL)-WAS-7-EAAZPLCPS | EA | $84,010.00 | $84,010.00 |
| | | | | | 0.00 | | |
| 1.00 | 1.00 | 0.00 | MISC- | ADDED RAZOR SLITTING (4 SLITS) | EA | $0.00 | $0.00 |
| | | | | | 0.00 | | |
| 1.00 | 1.00 | 0.00 | SN-81173-GST | COASTAL CONVERTORS PIN STACKER | EA | $0.00 | $0.00 |
| | | | | | 0.00 | | |
| 1.00 | 1.00 | 0.00 | MISC- | AS PER QUOTE NO.12288 | EA | $0.00 | $0.00 |
| | | | | | 0.00 | | |

| | | |
|---|---|---|
| SUB TOTAL | | $84,010.00 |
| PRE-INVOICED AMOUNT | | ($84,010.00) |

PREPAY                    **TOTAL AMOUNT DUE**          $0.00

A SERVICE CHARGE OF 1.5% PER MONTH WILL BE ADDED TO ACCOUNTS OVER 30 DAYS.
RETURNS NOT ACCEPTED WITHOUT OUR AUTHORIZATION - SUBJECT TO 20% RESTOCKING CHARGE.
PAYABLE IN U.S. DOLLARS.

**For your convenience we now accept VISA and Mastercard.**

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

④ Approved through
OMB No. 15
See back of form for
work Reduction Act

# NORTH AMERICAN FREE TRADE AGREEMENT
## CERTIFICATE OF ORIGIN

Please print or type
19 CFR 181.11, 181.22

| 1. EXPORTER NAME AND ADDRESS | 2. BLANKET PERIOD (DD/MM/YY) |
|---|---|
| ROSENTHAL MFG. CO., INC. 1840 JARKE DRIVE NORTHBROOK, ILLINOIS 60062 U.S. TEL. NO. 847-714-0404 TAX IDENTIFICATION NUMBER: | FROM 19/10/2005 TO 31/05/2006 |
| 3. PRODUCER NAME AND ADDRESS SAME AS EXPORTER | 4. IMPORTER NAME AND ADDRESS COASTAL CONVERTERS 9969 RIVER WAY UNIT 140 DELTA, B.C. V4G 1M8 CANADA |
| TAX IDENTIFICATION NUMBER: | TAX IDENTIFICATION NUMBER: |

| 5. DESCRIPTION OF GOOD(S) | 6. HS TARIFF CLASSIFICATION NUMBER | 7. PREFERENCE CRITERION | 8. PRODUCER | 9. NET COST | 10. COUNTRY OF |
|---|---|---|---|---|---|
| ORDER ID: 11001 PURCHASE ORDER NUMBER VERBAL: JIM MCLAUGHLIN<br><br>84 INCH WIDE SHEETER/CUTTING MACHINE MODEL NUMBER WAS-7-EAAFLCPSZ SERIAL NUMBER 81173 | 8441.80.0000 | B | YES | NC | U |

I CERTIFY THAT:

- THE INFORMATION ON THIS DOCUMENT IS TRUE AND ACCURATE AND I ASSUME THE RESPONSIBILITY FOR PROVING SUCH REPRESENTATIONS. I UNDERSTAND THAT I AM LIABLE FOR ANY FALSE STATEMENTS OR MATERIAL OMISSIONS MADE ON OR IN CONNECTION WITH THIS DOCUMENT;

- I AGREE TO MAINTAIN, AND PRESENT UPON REQUEST, DOCUMENTATION NECESSARY TO SUPPORT THIS CERTIFICATE, AND TO INFORM, IN WRITING, ALL PERSONS TO WHOM THE CERTIFICATE WAS GIVEN OF ANY CHANGES THAT COULD AFFECT THE ACCURACY OR VALIDITY OF THIS CERTIFICATE;

- THE GOODS ORIGINATED IN THE TERRITORY OF ONE OR MORE OF THE PARTIES, AND COMPLY WITH THE ORIGIN REQUIREMENTS SPECIFIED FOR THOSE GOODS IN THE NORTH AMERICAN FREE TRADE AGREEMENT, AND UNLESS SPECIFICALLY EXEMPTED IN ARTICLE 411 OR ANNEX 401, THERE HAS BEEN NO FURTHER PRODUCTION OR ANY OTHER OPERATION OUTSIDE THE TERRITORIES OF THE PARTIES; AND

- THIS CERTIFICATE CONSISTS OF ___1___ PAGES, INCLUDING ALL ATTACHMENTS.

| 11. 11a. AUTHORIZED SIGNATURE *Jane Cortez* | 11b. COMPANY ROSENTHAL MFG. CO., INC. |
|---|---|
| 11c. NAME (Print or Type) JANE CORTEZ | 11d. TITLE CUSTOMER RELATIONS |
| 11e. DATE (DD/MM/YY) 19/10/2005 | 11f. TELEPHONE NUMBER (Voice) 847-714-0404 (Facsimile) 847-714-0440 |

**CANADA CUSTOMS INVOICE**

Revenue
Customs and Excise

Page 1 of 1

| | |
|---|---|
| **1. Vendor (Name and Address)**<br><br>ROSENTHAL MFG. CO., INC.<br>1840 JARVE DRIVE<br>NORTHBROOK, ILLINOIS 60062 U.S.<br>TEL. NO. 847-714-0404 | **2. Date of Direct Shipment to Canada**<br><br>**3. Other References (include Purchaser's Order No.)**<br>VERBAL ORDER PER JIM McLAUGHLIN |
| **4. Consignee (Name and Address)**<br><br>COASTAL CONVERTERS<br>9969 RIVER WAY UNIT 140<br>DELTA, B.C.   V4G 1M3<br>CANADA   TEL#604- 588-4850 | **5. Purchaser's Name and Address (if other than Consignee)**<br><br>SAME AS CONSIGNEE |
| | **6. Country of Transhipment** |
| **6. Transportation: Give Mode and Place of Direct Shipment to Canada**<br><br>TRUCK | **7. Country of Origin of Goods**<br>U.S. |
| | **8. Conditions of Sale and Terms of Payment** (i.e. Sale, Consignment Shipment, Leased Goods, etc.)<br><br>66% DEPOSIT BALANCE NET-30 |
| | **10. Currency of Settlement**<br>U.S. DOLLARS |

| 11. No. of Pkgs | 12. Specification of Commodities (Kind of Packages, Marks and Numbers, General Description and Characteristics, i.e. Grade, Quality) | 12. Quantity (State Unit) | Selling Price | |
|---|---|---|---|---|
| | | | **14. Unit Price** | **15. Total** |
| 1 | ORDER ID: 11001<br>PURCHASE ORDER VERBAL JIM McLAUGHLIN<br><br>84 INCH WIDE SHEETER/CUTTING MACHINE<br>MODEL NUMBER WAS-7-KAAFLCFSZ<br>SERIAL NUMBER 81173 | 1 | $84,010.00 | USD84,010.00 |

| | | |
|---|---|---|
| **18.** If any of fields 1 to 17 are included on an attached commercial invoice, check this box ☐<br><br>Commercial Invoice No. _____ | **16. Total Weight**<br>Net<br>Gross | **17. Invoice Total** |
| **19. Exporter's Name and Address (if other than Vendor)**<br><br>SAME AS VENDOR | **20. Originator (Name and Address)**<br>ROSENTHAL MFG. CO., INC.<br>1840 JARVE DRIVE<br>NORTHBROOK, ILLINOIS 60062 U.S. | |
| **21. Departmental Ruling (if applicable)** | **22.** If fields 23 to 25 are not applicable, check this box ☐ | |

| 23. If included in field 17 indicate amount | 24. If not included in field 17 indicate amount | 25. Check (if applicable) |
|---|---|---|
| (i) Transportation charges, expenses and insurance from the place of direct shipment to Canada<br>$ _____<br><br>(ii) Costs for construction, erection and assembly incurred after importation into Canada<br>$ _____<br><br>(iii) Export packing<br>$ _____ | (i) Transportation charges, expenses and insurance to the place of direct shipment to Canada<br>$ _____<br><br>(ii) Amounts for commissions other than buying commissions<br>$ _____<br><br>(iii) Export packing<br>$ _____ | (i) Royalty payments or subsequent proceeds are paid or payable by the purchaser ☐<br><br>(ii) The purchaser has supplied goods or services for use in the production of these goods ☐ |

TOPS FORM 3128  LITHO IN U.S.A.  DEPARTMENT OF NATIONAL REVENUE – CUSTOMS AND EXCISE

Rosenthal Manufacturing, Inc.





Shooters
Shearmaster
Rosenthal Shooter Model
Rosenthal Servo Shooter
Rosenthal
Sheeter/Stacker
Smartroll
Rosenthal MINI Sheeter
Custom

Features    Options    Videos    Technical Specification



## Rosenthal Servo Sheeter Product Specifications

Specifications subject to change. Standard configuration. Machines are built to order and can be custom configured.

## Cutting Technology

Proprietary Heavy Duty Scissors Action (Down Cut-Self Sharpening) Shear Cutting mechanism.

Blades are spring loaded with adjustable cutting force to maximize blade life.

D2 stainless steel blades can be re-sharpened, blade life varies by material

Over 5000 systems installed worldwide.

## Control Station

Allen Bradley PLC with Panel View Display for entering sheet length and batch count.

Wiring on flat panel, terminal blocks, numbered in NEMA 1 enclosure, terminal blocks, conforms to NFPA 79.

999 jobs can be stored and sequenced.

Sheet length is variable from 3.0" to 99999.9"

The Sheeter feeds material until a user defined length is reached, stops and cuts.

Automatic mode sheets material until the batch is satisfied.

Single Sheet Operation with button or foot pedal.

PM counter: Resettable PM counter and lifetime PM counter.

Optional ethernet Upgrade available.

Optional wireless PDA control available.

NEMA 4 available

## Drive System

Allen Bradley Ultra Servo Drive

Cog Belt Drive system

Rubberized Neoprene Drive and Pressure roll—Machined to ± 0.001" TIR

Idlers and dancer precision machined to TIR of ± 0.001"

Cut Length Tolerance on stable materials ± 1/64" for 36" long sheet

## Unwind,Material/Handling

P86

Ex. 2

79

**Rosenthal Manufacturing, Inc.**  Page 2 of 2

Roll width capacity 24" to 96"

Built to order in 12" increments

750lb capacity—3" Airshaft

Adjustable tension control on dancer PLI programmed in PLC, high and low limit proximity switches

Air Brake—Automatically adjusts as roll diameter decreases

Edge Guide—to track material ± 1/64"

Driven unwind, decurl and other configurations available

Output conveyor integrated next to knife—moves cut sheet from sheeter

### Production

Maximum feed speed 150 FPM      *40+ Hits/m*

Machine stops to cut for 2/3 second—total FPM varies by sheet length

✂ 20 pieces per minute 60" in length on light material (cut time 2/3 second)

### Common Options

Punching—Rounded Corners, Holes, Notches, Rectangles

Slitting—Razor, Score, Shear, Hot, Digital Position Readout, Trim removal

Output—Auto Stackers, Lowering Table, Doubling Bar

Rewind—Rewind partial or full web

Unwinds—Up to 4000lb capacity, driven unwinds, multiple unwinds, shaftless unwinds, cradle unwinds, Roll Carousel, Auto threading

PLC Upgrade—Allen Bradley Control Logics PLC with Panel View Display

---

Rosenthal Manufacturing designs and builds automation systems for converting rolls to sheets, wide rolls into narrower rolls, long rolls into shorter rolls, large sheets into smaller sheets and custom converting equipment. These systems are commonly referred to as sheeters, slitters, sheer rewinders, roll slicers, appliers, unwinds, roll stands, rewinds, graphical slicers, panel cutters, lay-up systems, log slitters, bologna slitters and sheet cutters.

Send us a sample roll of your material and we will gladly test it for you on one of our systems: adhesive vinyl, tape, pressure, veneers, non-wovens, banner, awnings, tent, fabric, leather, bubble, film, foam, foam tape, felt, gaskets, rubber, paper, PVC, polyester, polyurethane, polyurethane, copper foil, prepreg, PVB, EVA, paper and many other materials.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

COASTAL CONVERTORS, INC.,

                      *Plaintiff*

              v.

ROSENTHAL MANUFACTURING
COMPANY, INC.,

                    *Defendant*

No. 07 C 6904

Judge Milton I. Shadur

Magistrate Judge Nan R. Nolan

## ROSENTHAL MANUFACTURING COMPANY, INC.'S
## RESPONSE TO COASTAL CONVERTORS, INC.'S FIRST DOCUMENT REQUEST

Defendant Rosenthal Manufacturing Company, Inc. ("Rosenthal"), by and through its undersigned attorneys, in response to Plaintiff Coastal Convertors, Inc.'s ("Coastal") First Document Request states as follows:

## OBJECTION

Rosenthal objects to Instruction and Definition No. 3 of Coastal's First Document Request. That Instruction and Definition provides as follows: "When a request seeks documents related to sheeters of the 'same type' or 'same generic type' those terms include, without limitations, Rosenthal Servo Sheeters." Rosenthal objects on the grounds that the definition of the term "Rosenthal Servo Sheeters" is so broad as to include sheeters of a type different from that sold to Coastal. Put another way, the Pin Stacker sold to Coastal is not the same as or synonymous with all other "Rosenthal Servo Sheeters." Accordingly, Rosenthal objects to

$$\mathcal{E}X. \; 3$$

Coastal's attempt to conflate the different types of machinery. All responses to the Document

Requests incorporate this Objection.

Brett Nolan (ARDC No. 6256972)
SHEFSKY & FROELICH LTD.
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone:    (312) 527-4000
Facsimile:    (312) 527-4011
E-Mail:  bnolan@shefskylaw.com

**COUNSEL FOR ROSENTHAL MANUFACTURING
COMPANY, INC.**

## DOCUMENT REQUESTS

1.      All documents whereby any statement or notation of any type is made concerning the number of hits or put throughs (whether using such actual terms or not) or other description of the speed of operation of the type of sheeter which is involved in this action, including, without limitation, those contained in any brochures, catalogues or advertisements of any type relating to any sheeter of the generic type as that involved herein.

**RESPONSE:** Rosenthal objects to Request to Produce No. 1 on the grounds that Coastal seeks

documents relating to machinery different from that purchased by Coastal. Put

another way, the Pin Stacker purchased by Coastal is custom-made, and thus

brochures, catalogues or other documents relating to other kinds of machinery

built by Rosenthal are neither relevant nor could lead to the discovery of relevant

admissible evidence. Answering further, and subject to the above Objection, no

documents exist which contain any statement or notation by Rosenthal as to the

number of "hits" or "put-throughs" to be performed by the Pin Stacker.

2.      All written or recorded statements or memorializations of statements related in any way to the issues or evidence in this action.

2

**RESPONSE**: Rosenthal objects to Request to Produce No. 2 on the grounds that the phrase "related in any way to the issues or evidence in this action" is vague and speculative, as there is not yet any "evidence in this action." Subject to the above objection, Rosenthal will produce responsive documents at a mutually-convenient place and time.

3.    All documents relating in any way to assertions by anyone that the sheeter was not adequately performing.

**RESPONSE**: Subject to the above objection, Rosenthal will produce responsive documents at a mutually-convenient place and time.

4.    All documents regarding any effort by anyone to modify the subject sheeter or to remedy any claimed or perceived inadequacy or problem with the sheeter.

**RESPONSE**: Subject to the above objection, Rosenthal will produce responsive documents at a mutually-convenient place and time.

5.    All documents concerning any test or trial runs of the subject sheeter.

**RESPONSE**: No documents were created concerning the testing of the Pin Stacker, save for a video. Rosenthal is still searching for the complete video, but a portion of the video can be found on Rosenthal's web site.

6.    All diagrams, drawings, blueprints, photographs, videos and other depictions of any type and any plans or instructions for constructing, assembling or running the subject sheeter or one of its generic type.

**RESPONSE**: Rosenthal objects to Request to Produce No. 6 on the grounds (1) that such information is a trade secret and (2) that such information is neither relevant nor could lead to the discovery of relevant evidence. Subject to this objection, Rosenthal will produce the video of the Pin Stacker which is posted on

3

Rosenthal's website.   Moreover, Rosenthal will produce an instructional video

that was sent to Coastal after its purchase of the Pin Stacker.

    7.    All documents asserting any complaints concerning jamming, low speed operation, malfunction of any type, defects or misrepresentations, including, without limitation, any complaints filed in litigation.

**RESPONSE**: Rosenthal objects to Request to Produce No. 7 on the grounds that Coastal seeks

"complaints filed in litigation." Such information is neither relevant to Coastal's

claims nor could it lead to the discovery of relevant evidence. Subject to this

objection, Rosenthal will produce all non-privileged documents concerning

Coastal's complaints regarding "jamming, low speed, operation, malfunction of

any type, or defects or misrepresentations."

    8.    All other documents relating in any way to the subject sheeter.

**RESPONSE**: Subject to the above objection, Rosenthal will produce responsive documents at a

mutually-convenient place and time.

    9.    All other documents relating in any way to plaintiff.

**RESPONSE**: Subject to the above objection, Rosenthal will produce responsive documents at a

mutually-convenient place and time.

    10.    All policies of insurance or indemnification agreements which cover or which are asserted by anyone to cover any of the claims brought in this action.

**RESPONSE**: None.

Dated: May 14, 2008

Respectfully Submitted,

ROSENTHAL MANUFACTURING COMPANY, INC.

By: _____
David Rosenthal

Vice President
Its: _____

1076309_1

5

## CERTIFICATE OF SERVICE

The undersigned certifies and states that a true and accurate copy of the foregoing

**ROSENTHAL MANUFACTURING COMPANY, INC.'S RESPONSE TO COASTAL**

**CONVERTORS, INC.'S FIRST DOCUMENT REQUEST**, was served upon:

George E. Weaver
Law Office of George E. Weaver
105 East First Street
Suite 203
Hinsdale, Illinois 60521
Telephone: (630) 321-9810
Facsimile: (630) 323-8260
ARDC #2953412

via Federal Express this 15th day of May, 2008.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COASTAL CONVERTORS, INC., | |
| *Plaintiff* | No. 07 C 6904 |
| v. | Judge Milton I. Shadur |
| ROSENTHAL MANUFACTURING COMPANY, INC., | Magistrate Judge Nan R. Nolan |
| *Defendant* | |

## ROSENTHAL MANUFACTURING COMPANY, INC.'S ANSWER TO COASTAL CONVERTORS, INC.'S FIRST SET OF INTERROGATORIES

Defendant Rosenthal Manufacturing Company, Inc. ("Rosenthal"), by and through its undersigned attorneys, in response to Plaintiff Coastal Convertors, Inc.'s ("Coastal") First Set of Interrogatories states as follows:

## OBJECTION

Rosenthal objects to Instruction and Definition No. 3 of Coastal's First Set of Interrogatories. That Instruction and Definition provides as follows: "When an interrogatory requests information concerning sheeters of the 'same type' or 'same generic type' these terms include, without limitation, Rosenthal Servo Sheeters." Rosenthal objects on the grounds that the definition of the term "Rosenthal Servo Sheeters" is so broad as to include sheeters of a type different from that sold to Coastal. Put another way, the Pin Stacker sold to Coastal is not the same as or synonymous with all other "Rosenthal Servo Sheeters." Accordingly, Rosenthal



objects to Coastal's attempt to conflate the different types of machinery. All answers to the

Interrogatories incorporate this Objection.

Brett Nolan (ARDC No. 6256972)
SHEFSKY & FROELICH LTD.
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone:    (312) 527-4000
Facsimile:    (312) 527-4011
E-Mail: bnolan@shefskylaw.com

COUNSEL FOR ROSENTHAL MANUFACTURING
COMPANY, INC.

## INTERROGATORIES

1.      Did Defendant ever test (in any manner) or cause to be tested, the subject sheeter
or give it any trial run prior to its shipment to Plaintiff? If so, state the following for each such
test or trial run (collectively "test"):

      a.      The date;

      b.      The location;

      c.      The individuals operating the sheeter;

      d.      All other individuals who were present;

      e.      The length of time the sheeter was in operation during the test;

      f.      A detailed explanation of the results of the test;

      g.      A detailed description of any changes that were made to the sheeter
          following the test and prior to any subsequent test.

**ANSWER:**      Yes. Rosenthal tested the sheeter sold to Coastal (hereinafter, the "Pin Stacker")

several times prior to delivery to Coastal. The first time the Pin Stacker was

tested was in late 2005/early 2006 when Jack McLaughlin ("McLaughlin") and

2

Jennifer Wilson-Murray ("Wilson-Murray") visited the Rosenthal facility. Those present include McLaughlin, Wilson-Murray, Dave Clark ("Clark"), Ed Binkley ("Binkley") and Seymon Katz ("Katz"). The test took place at Rosenthal's facility in Northbrook, Illinois. Clark, Binkley and Katz operated the Pin Stacker using foam material supplied by Coastal. Coastal represented to Rosenthal that the material provided for the test was the material Coastal intended to ultimately use. The testing took place over approximately a three-hour period, during which time the Pin Stacker was run, adjusted and modified, and run again. This process occurred several times over the course of the testing. The computer program governing the Pin Stacker was modified during this time in order to maximize the Pin Stacker's production. McLaughlin was satisfied with the results of the testing. The Pin Stacker was also tested just prior to being shipped, in April 2006. Rosenthal believes that Michael Rosenthal, Binkley, Clark and Katz were present for some or all of the testing. Again, Rosenthal used material provided by Coastal during the testing. This test lasted approximately 30 minutes. The Pin Stacker was also run prior to shipping for purposes of creating a video. A portion of that video can be found on Rosenthal's website at www.rosenthalmfg.com/video.Pin_stacker.html. Rosenthal believes that Michael Rosenthal was present at the making of this video.

2.　Since January 1, 2002, to whom (giving names and addresses) has Defendant sold any sheeters of the generic type, or substantially similar to the type sold to Plaintiff and, if the number of such customers exceeds twenty, state the number and list the twenty such customers closet [sic] to Chicago.

3

**ANSWER:**    Rosenthal objects to Interrogatory No. 2 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the identity of Rosenthal's customers has no connection whatsoever to Coastal's claims arising out of its purchase of the Pin Stacker.

3.    Other than the claims alleged in this action, has Defendant received any claims or complaints, whether written or verbal, that any of its sheeters has not performed adequately, since January 1, 2002? If so, for each such claim, please state the following:

    1.    The person and entity first making such claim;

    2.    The date Defendant first received notice of such claim;

    3.    A detailed description of the assertions made in such claim;

    4.    Whether litigation was filed and, if so, the court in which the action was filed, the caption and the docket number;

    5.    The disposition of such claim;

    6.    The identity of claimant's attorney, if any.

**ANSWER:**    Rosenthal objects to Interrogatory No. 2 on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, claims or complaints made by other Rosenthal customers has no connection whatsoever to Coastal's claims arising out of its purchase of the Pin Stacker.

4.    Were any photographs, videos or other depictions made or taken of the subject sheeter? If so, state the date(s) such depictions were made, the identity of the person making such depictions and identity of the person who now has custody of them.

**ANSWER:**    Yes. Rosenthal took a video of the Pin Stacker in approximately April 2006, prior to its shipping the Pin Stacker to Coastal. Rosenthal may be unable to produce

the entire video, but is still searching for same. A portion of the video is on

Rosenthal's    website    at    www.rosenthalmfg.com/video.Pin_stacker.html.

Rosenthal believes that Michael Rosenthal made the video.

5.    Was Defendant covered, or asserted by anyone to be covered on any insurance policy or any indemnification provision covering any of the matters claimed herein? If so, for each such policy or provisions, state the policy limits and whether coverage has been accepted, or whether there has been a reservation of rights.

**ANSWER:**    No.

6.    Have your employees or anyone acting on your behalf had any conversations with any person at any time with regard to the asserted inadequate performance of the subject sheeter, or have they overheard any statements made by an [sic] person at any time concerning that subject? If the answer to this interrogatory is in the affirmative, state the following:

(a)    The date or dates of such conversations and/or statements;

(b)    The place of such conversations and/or statements;

(c)    All persons present for the conversations and/or statements;

(d)    The matters and things stated by the person in the conversations and/or statements;

(e)    Whether the conversation was oral, written and/or recorded; and

(f)    Who has possession of the statement if written and/or recorded.

**ANSWER:**    Rosenthal personnel have had conversations, correspondence and email with

agents of Coastal regarding Coastal's complaints about the Pin Stacker.

Rosenthal has and will produce documents which reflect these communications.

Moreover, Rosenthal has and will produce responsive documents relating to

internal communications arising out of Coastal's complaints. Finally, Rosenthal

answers that the following persons at Rosenthal have had discussions regarding

5

Coastal's complaints about the Pin Stacker:  David Rosenthal, Michael Rosenthal,

Lorelei Rosenthal, Dave Clark, Ed Binkley and Seymon Katz.

7.    Do you know of any other statements made by any person relating to the matters raised in this action?  If so, identify the person making such statement, give the date and details of the statement and state whether such statement was oral or written.

**ANSWER:**    No.

8.    Identify every person who may give opinion testimony concerning the issues of whether the subject sheeter jammed, did not function at adequate or represented speeds, was defective in any respect or was operated or repaired or modified incorrectly and give the details of each such opinion.

**ANSWER:**    David Rosenthal, Michael Rosenthal, Dave Clark and Seymon Katz all may

provide opinion testimony as to the following subjects:

a.    The construction of the Pin Stacker;

b.    The testing of the Pin Stacker;

c.    The performance of the Pin Stacker;

d.    The specifications of the Pin Stacker;

e.    The material used for testing of the Pin Stacker; and

f.    The material provided by Coastal to test the Pin Stacker.

Dated: May 14, 2008                                    Respectfully Submitted,

ROSENTHAL MANUFACTURING COMPANY, INC.

By:  _____

David Rosenthal

Vice President
Its:  _____

6

## CERTIFICATE OF SERVICE

The undersigned certifies and states that a true and accurate copy of the foregoing

**ROSENTHAL MANUFACTURING COMPANY, INC.'S ANSWER TO COASTAL**

**CONVERTORS, INC.'S FIRST SET OF INTERROGATORIES**, was served upon:

George E. Weaver
Law Office of George E. Weaver
105 East First Street
Suite 203
Hinsdale, Illinois 60521
Telephone: (630) 321-9810
Facsimile: (630) 323-8260
ARDC #2953412

via Federal Express this 15th day of May, 2008.

LAW OFFICE OF

# GEORGE E. WEAVER

105 EAST FIRST STREET
SUITE 203
HINSDALE, ILLINOIS 60521
TELEPHONE 630/321-9810
FAX 630/323-8260

May 27, 2008

By Facsimile and Mail

Brett Nolan
Shefsky & Froelich Ltd.
111 East Wacker Drive
Suite 2800
Chicago, IL 60611

Re:    Coastal Convertors, Inc. v. Rosenthal Manufacturing Co., Inc.

Dear Brett:

I would like to raise the following issues with you concerning defendant's response to plaintiff's written discovery:

## Defendant's Interrogatory Answers

**Defendant's General Objection:**  You have objected to our definition of sheeters of the "same type" or "same generic type" as bringing Rosenthal Servo Sheeters within its scope.  In Rosenthal promotional literature, which is attached hereto, defendant describes the sheeter which was sold to plaintiff as a "standard configuration", which "can be custom configured."  In plaintiff's interrogatories, plaintiff has sought information concerning the customers defendant has sold similar sheeters to since January 1, 2002 (Interrogatory No. 2) in an effort to discover what experiences defendant's customers have had with those sheeters and what complaints defendant has received concerning those sheeters (Interrogatory No. 3).  Among other things, plaintiff is interested in discovering whether sheeters, which are substantially the same as the subject sheeter, have proved to be defective or whether the sheeter sold to plaintiff contains a modification which is not present in other Rosenthal sheeters which have performed well.

**Interrogatory No. 1:**  Please provide the actual dates for each of the tests (it appears that there were three) and the date(s) the computer program governing the Pin-Stacker was modified.

**Interrogatory No. 2.**  See discussion above regarding defendant's general objection.

*Ex. 5*

# GEORGE E. WEAVER

Brett Nolan
Shefsky & Froelich Ltd.
May 27, 2008
Page 2


Interrogatory No. 3. See discussion above regarding defendant's general objection.

Interrogatory No. 4. You have indicated that Rosenthal may be unable to produced the entire video, which was taken in approximately April 2006. Please provide an explanation as to what has happened to the missing portion of the video, who has searched for the video and what have been the results of that search.

Interrogatory No. 8. Please give the details of the opinions of the witnesses you have listed.

Please also provide a verification indicating that the interrogatories were answered under oath.


## Defendant's Response to Plaintiff's Document Requests

Defendant's General Objection: Please see the discussion above concerning your general objection to plaintiff's interrogatories.

Request No.1. See discussion concerning defendant's general objection.

Request Nos. 2, 3, 4, 6, 7, 8, and 9. After taking so long to respond to Plaintiff's Request for Production, I am surprised that you did not produce any documents, but merely said that you would in the future. Please produce the documents at your earliest convenience. If you expect that you will be unable to produce the documents by June 5, 2008, please contact me immediately so that we may discuss the timing of your production.

Request No. 5. Please produce either a DVD or tape of the video and provide an explanation concerning what portion of the video is missing and the efforts that are being made to locate it.

Request No. 6. The requested information is highly relevant for several reasons, including the possibility that an expert may be able to point to the drawings of the sheeter to explain the cause of the inadequate performance of the subject sheeter. Plaintiff would be willing to enter into a suitable

# GEORGE E. WEAVER

Brett Nolan
Shefsky & Froelich Ltd.
May 27, 2008
Page 3

confidentiality agreement to use this information solely for purposes of this litigation.

    <u>Request No. 7</u>.  Plaintiff should be able to examine complaints concerning similar sheeters.

    Please give me a call within the next couple of days so that we may attempt to amicably resolve these matters.

Very truly yours,

George E. Weaver

GEW:im
Enclosures



111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

Tel 312.527.4000  Fax 312.527.4011
www.shefskylaw.com

Brett Nolan
Direct Dial:  (312) 836-4165
Facsimile:  (312) 527-4011
E-Mail  bnolan@shefskylaw.com

Reference No.
26691-00005

June 13, 2008

<u>**VIA FEDERAL EXPRESS**</u>

Mr. George E. Weaver
Law Office of George E. Weaver
105 East First Street
Suite 203
Hinsdale, Illinois 60521

      Re:    ***Coastal Convertors, Inc. v. Rosenthal Manufacturing Company, Inc.***
           **Case No. 07 C 6904**

Dear George:

    We write in response to your letter dated May 27, 2008, and in furtherance of our obligations under Rule 37 of the Federal Rules of Civil Procedure. We will address your concerns in the order in which you present them.

**Interrogatories**

<u>**Rosenthal Manufacturing Company, Inc.'s ("Rosenthal") General Objection
to Coastal Convertors, Inc.'s Definitions ("Coastal")**</u>

    In your Introduction and Definition No. 3, you purport to define the sheeter purchased by Coastal (hereinafter, the "Pin Stacker") as the "same type" or "same generic type" as all other Rosenthal Servo Sheeters. Rosenthal objects to this definition on the grounds that it is factually incorrect. The promotional material attached to your letter supports our position. This promotional material can be fairly characterized as describing potential options available to a customer. To say that the Pin Stacker sold to Coastal is the "same type" or "same generic type" as other sheeters sold by Rosenthal is incorrect. Given the options and configurations available, as described in the promotional material, it is clear that different machines cannot be described as the "same type." Thus, your definition is overly broad, especially in light of your attempt to seek performance information relating to these different products.

<u>**Interrogatory No. 1**</u>

    The first date the Pin Stacker was tested was in late 2005 or early 2006, the exact date is unknown at this time. Representatives from Coastal were present during this first test, so the

**Shefsky**
**&Froelich**
Attorneys at Law

particular date should be just as available to Coastal as it is to Rosenthal. Nonetheless, if Rosenthal is able to identify the exact date with certainty, we will provide that information to you. The computer program governing the Pin Stacker was modified during this first test. The stacker was also tested prior to being shipped, in April of 2006.

## Interrogatory No. 2

You seek a list of customers to whom Rosenthal sold "any sheeters of the generic type, or substantially similar to the type sold to Plaintiff. . . ." First, this request is neither relevant nor could it lead to the discovery of admissible evidence. Coastal's claims are predicated upon the performance of the Pin Stacker. The performance of any other product sold by Rosenthal has no relevance to any element of Coastal's claims. Coastal is not pursuing a class action against Rosenthal, and evidence of a "pattern and practice" of sheeter performance is not an element of any of Coastal's claims.

Second, and as it relates to the General Objection, the performance of other Rosenthal products has no relevance to the performance of the Pin Stacker because of the fundamental differences between the Pin Stacker and those other products.

## Interrogatory No. 3

You seek a list of all complaints received from other Rosenthal customers regarding "any of its sheeters." This information is neither relevant nor could it lead to the discovery of admissible evidence as to any elements of Coastal's claims. Again, Coastal's claims are limited to the performance of the Pin Stacker.

In our view, the probity (or lack thereof) of this Interrogatory is best addressed by asking: "Would the fact that no other customer of Rosenthal ever complained about the performance of a Rosenthal product make it any more or less likely that the Pin Stacker purchased by Coastal was defective?" Would Coastal's claim be defeated (or even crippled) by the fact that Rosenthal has never had a complaint? Or, conversely, would Coastal's claim be more likely to be successful if Rosenthal had received complaints from other customers? The answer to these questions must be "No." For purposes of Coastal's claims, the analysis begins and ends with the performance of the Pin Stacker.

## Interrogatory No. 4

As we indicated, Rosenthal has been unable to locate the entire video of the Pin Stacker. As to the question of what happened to the rest of the video, the answer is fairly prosaic: at the time of the video, Rosenthal saw no need to retain the video. Rosenthal's intent was to place a portion of the video on its website for promotional purposes. Once that task was completed, the entire original video was not specifically and consciously kept. There is a possibility, however,



**Shefsky**
**&Froelich**
Attorneys at Law

Mr. George E. Weaver
June 13, 2008
Page 3

that the original video could be found; Rosenthal personnel are searching their files. Obviously, if the video is located, it will be produced to you.

### Interrogatory No. 8

You have asked that Rosenthal provide "details" of the opinions identified in Rosenthal's response to Interrogatory No. 8. Rosenthal objects to this request on the grounds that Rosenthal's answer to Interrogatory No. 8 is complete. Rosenthal identified six different topics upon which Rosenthal may opine. Although these topics are not exhaustive, they provide Coastal fair warning as to the types of opinions held by Rosenthal employees.

### Verification

We will provide a verification signed by David Rosenthal.

### Document Requests

### Request to Produce No. 1

You seek all documents containing statements made by Rosenthal as to the number of "hits" or "put throughs" per minute capable of being performed by any Rosenthal sheeter. As a threshold matter, Rosenthal objects because, as discussed above, the Pin Stacker is fundamentally different from other Rosenthal products, and thus "generic types" of sheeters is a factually incorrect definition. Rosenthal also answered by stating that no document exists in which Rosenthal describes the number of "hits" or "put throughs" per minute for the Pin Stacker.

### Requests to Produce Nos. 2 through 4, and 6 through 9

Rosenthal encloses hereto additional responsive material. Please note that the vast amount of responsive material was previously provided to you as part of Rosenthal's Rule 26(a)(1) initial disclosures.

### Request to Produce No. 5

As described earlier, the full length of the video will be produced if and when it is located. Rosenthal is searching its files for a copy of the full video.

### Request to Produce No. 6

Rosenthal stands on its objection. Blueprints, drawings, plans, etc. of the Pin Stacker constitute Rosenthal's trade secrets. These trade secrets are closely guarded by Rosenthal and represent its competitive advantage in the marketplace.

**Shefsky**
**&Froelich**
Attorneys at Law

Mr. George E. Weaver
June 13, 2008
Page 4

**Request to Produce No. 7**

Rosenthal maintains that any complaints about machines other than the Pin Stacker are irrelevant to Coastal's claims. *See* Rosenthal's discussion of its General Objections, above.

Should you wish to discuss these matters further, please call me at the number above.

Very truly yours,

SHEFSKY & FROELICH LTD.

Brett Nolan

BN:yal
Enclosure
1085670_2

cc:   Mr. David Rosenthal

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing PLAINTIFF'S MOTION TO COMPEL to be served by personal service on September 4, 2008, upon the following:

Brett Nolan
Shefsky & Froelich Ltd.
111 East Wacker Drive, Suite 2800
Chicago, IL 60611


_____
GEORGE E. WEAVER